## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARLOWE JONES,

      Plaintiff,

v.                                                                            Case No.:

THE CITY OF NEW PORT RICHEY,
ROBERT      MARLOWE,      KIM
BOGART,    DEBBIE    MANNS,
NICHOLAS  RICKUS,  TIMOTHY
BERGE,  and    CHRISTOPHER
MELLECKER,

      Defendants.

_____/

## COMPLAINT

      MARLOWE JONES, by and through the undersigned counsel, sues the CITY

OF NEW PORT RICHEY, ROBERT MARLOWE, KIM BOGART, DEBBIE

MANNS, NICHOLAS RICKUS, TIMOTHY BERGE, and CHRISTOPHER

MELLECKER, stating as follows:

## PARTIES

1.     MARLOWE JONES is an individual that lives in the City of New Port Richey,

      Florida which is in Pasco County, Florida.

2.     The City of New Port Richey ("City") is a Florida Municipal Corporation

      organized and existing under the laws of the State of Florida, with the capacity

      to sue and be sued.

3.      The City of New Port Richey Police Department is a law enforcement agency under the laws for the State of Florida, and is a political subdivision of the City of New Port Richey (hereinafter the City of New Port Richey and the City of New Port Richey Police Department will be referred to collectively as "NPR")

4.      Robert Marlowe is an individual that resides in the City of New Port Richey, which is in Pasco County, Florida.  At all times material hereto, Marlowe was the Mayor of the City of New Port Richey.

5.      Debbie Manns is an individual that resides in the City of New Port Richey, which is in Pasco County, Florida.  At all times material hereto, Manns was the City Manager of the City of New Port Richey.

6.      Kim Bogart is an individual that resides in the City of New Port Richey, which is in Pasco County, Florida.  At all times material hereto, Bogart was the police Chief of the City of New Port Richey Police Department.

7.      Nicholas Rickus is an individual that resides in the City of New Port Richey, which is in Pasco County, Florida.  At all times material hereto, Rickus was a police officer for the City of New Port Richey Police Department.

8.      Timothy Berge is an individual that resides in the City of New Port Richey, which is in Pasco County, Florida. At all times material hereto, Berge was a detective for the City of New Port Richey Police Department.

9.      Christopher Mellecker is an individual that resides in Weeki Wachee, which is in Hernando County, Florida. At all times material hereto, Mellecker was an Operations Lieutenant for the City of New Port Richey Police Department.

## JURISDICTION AND VENUE

10.     This lawsuit seeks monetary compensation for JONES of over $2,000,000.00, exclusive of attorneys' fees, court costs, interest, and/or other administrative costs.

11.     Venue for this lawsuit is proper in the United States District Court for the Middle District Court of Florida (Tampa Division) because the acts and omissions giving rise to the claims asserted in this lawsuit occurred in Pasco County, Florida.

12.     This Court has original jurisdiction of the matters alleged in this lawsuit pursuant to 28 U.S.C. § 1331 as several of the claims asserted in this lawsuit arise under the laws of the United States of America, including 28 U.S.C. § 1983.

13.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights, privileges, or immunities secured by the Constitution of the United States and 28 U.S.C. § 1367 which provides supplemental jurisdiction over state laws.

14.     This Court has supplemental jurisdiction over the state law claims under 18 U.S.C. § 1367, as the state law claims share all common operative facts with the federal law claims, and the parties are identical. Resolving all state and federal claims in a single action serves the interests of judicial, efficiency, economy, and fairness.

15.  This Court has personal jurisdiction over each party in this lawsuit since each is a resident of the State of Florida.

16.  Pursuant to Fla. Stat. § 768.28(6)(a) (2022), JONES notified the Defendants and the Florida Department of Financial Services of his claims six (6) months or more prior to the filing of this action.

17.  All conditions precedent to the filing of this action have occurred, accrued, or have been waived as a matter of law.

## GENERAL ALLEGATIONS

### New Port Richey's History of Discrimination, Racism, and Harassment Towards its Citizens

18.  NPR has a long history of contention between its government officials and/or agents and residents of the City, especially residents that are minorities or residents that speak out against injustices at the hands of NPR.

19.  Since 2010, NPR has been sued numerous times[1] due to the brutal, unlawful, and unconstitutional way NPR has treated individuals of color, individuals who are of faiths other than conservative Christians (such as those of Jewish faith), and others in the community who do not look or think like the politicians and individuals that govern the City.

---

[1] There have been numerous policy brutality lawsuits filed by Latin Americans and African Americans, and numerous citizen complaints, some of which were so egregious, that NPR had no choice but to terminate the police officers involved.

20.    Since 2020, several NPR officers have come under scrutiny for participating in racist, harassing, and anti-Semitic behavior:

21.    For example, NPR police officers have prayed and comingled with the Proud Boys[2], a far-right extremist group classified as a terrorist organization in other countries due to its White supremacist ideologies.

22.    NPR police officers, like Officer Elizabeth Dennison, have also posed in front of Confederate flags. The Confederate flag is a denounced hate symbol that continues to remain popular among White Supremacists.



---

[2] The Southern Poverty Law Center has designated the Proud Boys as a hate group while Canada and New Zealand categorize the Proud Boys as a terrorist organization. Per Canada's government website: "The Proud Boys is a neo-fascist organization that engages in political violence and was formed in 2016. Members of the group espouse misogynistic, Islamophobic, anti-Semitic, anti-immigrant, and/or white supremacist ideologies and associate with white supremacist groups. The Proud Boys consists of semi-autonomous chapters located in the United States (U.S.), Canada, and internationally. The group and its members have openly encouraged, planned, and conducted violent activities against those they perceive to be opposed to their ideology and political beliefs. The group regularly attends Black Lives Matter (BLM) protests as counter-protesters, often engaging in violence targeting BLM supporters. On January 6, 2021, the Proud Boys played a pivotal role in the insurrection at the U.S. Capitol…."

23.    Other NPR police officers, such as Corey Oliver, also leaked department intel to inform right-winged extremists the whereabouts of a Black Lives Matter ("BLM") silent protest. This is particularly dangerous as these extremists are often armed and looking for an excuse to harm BLM demonstrators.





24.    Police Chief Bogart received so much criticism for supporting and defending the racist and unlawful behavior of the men and women that serve under his command, that he was forced to retire:



25.    However, just fourteen (14) days before Chief Bogart submitted his resignation letter, Chief Bogart stood before New Port Richey's city council, read the laundry list of police officers who had made headlines for their problematic behavior, and defended all of them without any regard to the harm his officers had caused citizens in the community.

## New Port Richey police chief defends cops who made Holocaust joke and prayed with Proud Boys

The chief read off a list of disturbing police incidents, and defended all of them.

By Justin Garcia on Fri, Dec 16, 2022 at 12:56 pm





NPR Police Chief Kim Bogart (right) poses with Elizabeth Dennison, who he defended for posting a picture in front of a confederate flag.

### TRENDING



**Ybor City's Italian Club board chair arrested for failing to update sex offender information**

**Florida Republican behind state's 'Don't Say Gay' bill pleads guilty to $150K COVID relief fraud**



## New Port Richey police chief Kim Bogart retires after defending cops who made Holocaust jokes

The chief also defended cops who posed in front of a Confederate flag and leaked intel to an armed right-wing vigilante

By Justin Garcia on Wed, Jan 4, 2023 at 11:49 am



Photo by Dave Decker

New Port Richey Police Chief Kim Bogart stands outside city hall near right-wingers counterprotesting a BLM march.

New Port Richey Police Department saw several big scandals over the past two-and-a-half years, and now the police chief will leave the department this month.

At the end of a council meeting last night, City Manager Debbie Manns announced that New Port Richey Police Chief Kim Bogart is retiring, and Jan. 27 is his last day.

Manns said that Bogart submitted his resignation letter on Dec. 30, 2022. She thanked him and congratulated him on his 10 years of service, and said that she still expected him to be active in the city during his retirement.

### TRENDING

**The four-day Grand Prix of St. Petersburg starts today**

**Food From the Soul, a festival that highlights cuisine from people of color, happens in Tampa next month**

### NEWSLETTERS

**Join Creative Loafing Tampa Bay Newsletters**

26.     Among those that Chief Bogart defended was Officer Todd Gee, who broke into a Jewish woman's home over alleged code enforcement issues and made jokes about Holocaust victim Anne Frank as another police officer laughed at the lewd insinuation and anti-Semitic remarks.

27.     Chief Bogart stated that the officers, whose behavior was caught on body camera, "were not intending to have any anti-Semitism related to that incident" and that this was simply routine police business, pretending that this incident was not an act of racism and discrimination.

28.     Although Chief Bogart and City Manager Manns made comments about "sensitivity treatment" for these officers, *none* of the officers ever received such treatment.

29.     The unlawful support of racist, harassing, and antisemitic behavior did not reside solely with Chief Bogart and City Manager Manns[3], the Mayor, Robert Marlowe, also supported such behavior.

30.     Mayor Marlowe often went on tirades complaining about citizens exercising their constitutional rights and the "nonsense" of the Sunshine laws imposing obligations on NPR officials.

31.     During these tirades, Mayor Marlowe has called BLM protestors "asses", has falsely accused peaceful BLM demonstrators of "terrorizing children", and has

---

[3] Interestingly, as all this chaos unfolded under the watch of City Manager Manns and Chief Bogart, the two of them were engaged in an inappropriate romantic relationship that clearly impaired City Manager Manns ability to do her job—managing the NPR employees she was responsible for, which included Chief Bogart and his police officers.

accused BLM demonstrators of marching downtown to "hurt" people and local
businesses.

32.    Mayor Marlowe's pious, insensitive, and unconstitutional stance on executing
the obligations of his position were so egregious, that New Port Richey citizens
filed petitions seeking his removal from office.

33.    Mayor Marlowe's lack of respect for the U.S. Constitution, Florida State
Constitution, and laws of the State of Florida in general, can be summed up by
the tirade he threw during a City Council meeting about public records requests
from the very same Jewish woman who had her residence broken into by NPR
officers under the leadership of City Manager Manns and Chief Bogart:



**New Port Richey mayor says people seeking public records should 'go away'**

By Justin Garcia, 2022-09-09

Mayor Rob Marlowe gives a speech in June.

At a New Port Richey city council meeting last Tuesday, Mayor Rob Marlowe went on a tirade against people who speak during public comment, and against citizens who request public records.

34.    Government agencies, including New Port Richey, are required by law to receive public comments and consider the comments they receive. Furthermore, Florida's "Sunshine Law" requires that records be maintained and provided by governments in a timely manner.

35.    Despite those laws, Mayor Marlowe sounded off about his disdain for public input and for those who want transparency from their government.

36.    Mayor Marlowe called public comments "garbage", accused the City's citizens of "weaponizing" requests for public records, and called out members in the audience[4].

> "I know we've got at least one person in this room tonight that is involved in that and I will let them remain nameless," Marlowe said. "But I know who they are and I know who the others are."

> "I don't care where they go, just go away," Marlowe said of the people who were requesting the records.

37.    NPR and its officials (including the Mayor, City Manager, and Police Department) have a robust history of abusing their political positions of power to weaponize the City Code and Florida law to attack minorities and others.

38.    For example, in 2020, many New Port Richey citizens came forward to report NPR police officer Bobby Lubrido and his unfair and aggressive treatment

---

[4] The Jewish woman who had her home broken into by NPR police was the target of this rant – a citizen simply trying to understand why law enforcement would break into her home to conduct an illegal and unconstitutional search of the premises.

toward African American teens during an arrest. In the arrest video, Officer Lubrido is seen kneeling on a boy's neck, similar to the actions that led to the murder of Georgy Floyd.

39. Nothing was done and Officer Lubrido continued his illegal and wrongful behavior. On August 2022, Officer Lubrido was finally terminated after an internal investigation confirmed the allegations of sexual misconduct raised by a minor girl who was in his custody.

### New Port Richey officer fired amid allegations of fondling girl in custody

Bobby Lubrido, 43, was fired after an investigation into claims he touched a 17-year-old girl's buttocks and breasts while taking her to juvenile detention.

  



Bobby Lubrido is seen in this undated photo from the New Port Richey Police Department. [ New Port Richey Police Dept. ]

By **Anastasia Dawson** *Times staff*

Published Sep. 9, 2022 | Updated Sep. 9, 2022

40. In response, Chief Bogart expressed that it was "unfathomable" that Officer Lubrido was responsible for what the minor reported, given that Officer Lubrido

had fifteen (15) years of experience as an officer with an "unblemished career."

> "It was unfathomable that what she had alleged had occurred with someone that had 15 years of experience as an officer with an unblemished career," Kim Bogart, a chief with the NPRPD, said, according to WTSP.

41.    Nonetheless, Chief Bogart admitted that he "had enough to know inappropriate behavior occurred" and that he believed the minor girl.

> During the internal investigation, the New Port Richey Police Department reviewed vehicle video, cell phone records, time stamps and other evidence. Most of what the girl said could be corroborated, including the body-worn camera being turned off during the time of the alleged fondling.

> "I had enough to know inappropriate behavior occurred. She said, he said, but enough to make me believe her," Bogart said.

42.    However, despite the overwhelming evidence, the fact that the majority of the minor girl's story could be corroborated, the City's residents' pleas to criminally charge Officer Lubrido, and Chief Bogart's admission of believing the accusations and having "enough" to know Officer Lubrido behaved inappropriately, Chief Bogart continued to cover the unlawful and wrongful actions of his officers by stating that he could not criminally charge Officer Lubrido due to lack of "probable cause."

> However, despite the department finding probable cause to terminate Lubrido, authorities didn't believe they had enough to charge him.

> "I had a preponderance of evidence, but I didn't have probable cause," Bogart noted, WTSP reports.

43.   Further demonstrating NPR's perverse abuse of power and policies of tolerating dangerous behavior by their officials, also in 2020, NPR police officer Joseph Valente wrongfully and disturbingly aggressively arrested Shinikki Whiting, an African American female.

44.   While Whiting was exiting her home to check her mail, she noticed an ambulance and patrol car in her backyard. Her neighbor, Robert Clark, informed her that his girlfriend had overdosed.

45.   Whiting asked the EMTs if she could give Clark's girlfriend a hug and reassuring words, to which the EMTs consented and moved to the side so that Whiting could do so.

46.   Suddenly officer Valente took Whiting's arm, pushed her off Clark's girlfriend, and pushed Whiting's chest. He proceeded to arrest Whiting and refused to give her his name[5], badge number, or reason for the unlawful arrest.

47.   Once at a holding cell, officer Valente failed to uncuff Whiting and failed to make the required visual checks every 10 minutes. Consequently, Whiting was unable to properly use the restroom and was forced to defecate on herself.

48.   These are just a few recent examples of the egregious and intolerable behavior that NPR and its police officers have committed and continue to commit against New Port Richey's residents.

---

[5] Similarly, during JONES' wrongful arrest, at least one officer also refused to give his name and badge number to JONES despite JONES' repeated request for the same.

49.    To date, JONES continues to be harassed by NPR. Under the guise that the officers are looking for someone else or that they are "responding" to a 911 phone call (that was never made), multiple police officers continue to show up at JONES' home, intimidating him and his young daughters. Recently, the police officers even came to his home with their guns drawn.

50.    In the case of JONES, other African Americans, and other minorities in the City, DEFENDANTS have a penchant for abusing their political power and influence to censure New Port Richey's citizens from speaking out about their rights or demanding justice and equality.

51.    DEFENDANTS went as far as citing BLM protestors for "noise violations" (which were later dropped), using the City's political avenues to intimidate and prevent the protestors from speaking out against NRP and its city officials.



52.   Unfortunately, Pasco County is home to several hate groups, including the Ku Klux Klan and the Proud Boys. For every BLM protest, there are counterdemonstrations, threats of violence, and even death threats from these supremacist hate groups.

<u>Brief History about Marlowe Jones</u>

53.   JONES is an African American man who is a father to three girls, a business owner, and a resident of the city of New Port Richey.   In fact, JONES' family has a robust history in the New Port Richey area, dating back to 1924 when his ancestors relocated from Georgia to New Port Richey, being one of the first and largest African American families to reside in the area.

54.   JONES was mentored through the African American Club of Pasco County during his adolescent and early adult life, and eventually became a community leader due to his efforts to support the local African American community and the community of New Port Richey in general.

55.   JONES has and continues to be a civil rights activist who helps organize peaceful protests to protest racism and the unfair treatment of African Americans by police—a fact known by NPR, its elected officials, City Manager Manns, Chief of Police Bogart, and the various police officers purporting to serve all citizens of New Port Richey.



Activist Marlowe Jones speaks during a Black Lives Matter rally held outside the West Pasco Judicial Center in 2020. A jury acquitted him this week of charges of battery on a police officer and resisting arrest related to an arrest at a protest. [ CHRIS URSO | Times ]

56.  In 2020, JONES was the leader and organizer of a Black Lives Matter group that mobilized numerous demonstrations over the police murder of George Floyd. Their protests also advocated for accountability and justice from their elected officials.

57.  The Black Lives Matter activist group in Pasco County had been marching in New Port Richey on a weekly basis for months, protesting racism and the unfair treatment of African American people by police.

<u>The Peaceful Black Lives Matter Protest</u>

58.  On July 24, 2020, JONES helped organize a peaceful Black Lives Matter (BLM) protest ("the Protest").

59.  All the BLM protests in New Port Richey were peaceful, largely because of JONES' work with the City.

60.  One of JONES' duties at the Protest was to ensure that the demonstrators remained safe regardless of the racial tensions at hand.

61.   At the Protest, Patrick Oshnock, a White male, confronted and taunted demonstrators, yelling "White lives matter" and pressing his face inches from the demonstrators.

62.   As the Protest was winding down along Nebraska Avenue, an inebriated Oshnock came out of a bar called "The Social" to confront, accost, and violently attack BLM demonstrators.

63.   Oshnock began confronting and attacking Stephanie Hinkle, a female activist who was acting as volunteer security for the Protest.

64.   Oshnock lunged at Hinkle, knocking her to the ground and punching her in the face. Hearing the commotion, JONES rushed over to assess and deescalate the situation. Oshnock proceeded to strike JONES as well.

65.   As NPR officers came towards the scene, (one of them being Officer Nicholas Rickus, who would later falsely accuse JONES of battery and obstruction of justice), JONES asked them where they had been as the demonstrators got violently attacked. One officer replied that they had conveniently been in a "blind spot."

66.   At no point in time did JONES ever touch or approach Officer Rickus or any police officer. Conveniently, Officer Rickus was not wearing a body camera that night, in direct violation of the police department's policy.

67.   Nonetheless, after the chaotic evening, JONES went home to his family and continued his daily life.

68.    However, as time would reveal, this interaction at the Protest became the purported basis for unfounded charges, including the obstruction of justice[6] and alleged battery on a law enforcement officer—a felony[7]—that put JONES in jail and changed his life as he knew it.

### The Wrongful Arrest

69.    On July 31, 2020 (approximately one week after the Black Lives Matter Protest), JONES was at the New Port Richey Police Department helping colleagues file a Missing Person report for Hinkle (who went missing after another peaceful protest).

70.    As JONES stood talking to his colleagues, approximately fifteen (15) officers suddenly came from behind, aggressively grabbed his arms, and proceeded to arrest him without explanation or cause for such aggressive behavior.

71.    JONES would later receive credible information from a former City employee that City Manager Manns and Chief Bogart had met with other City employees to discuss the "delay" in charging JONES and decide what criminal charge "would stick".

---

[6] Due to the danger that African American protestors were in, White allies would often march in front of the protests so that African American protestors would not get hurt. The protestors would often use the words "White lives to the front" to signal that African American people were in possible danger and White allies should march in front. Chief Bogart advised JONES he did not want him using that phrase and if he did so, it would be considered "obstruction." It is clear that Chief Bogart and the officers and/or city officials at NPR were desperate to nail any possible charge on JONES.
[7] Interestingly, Oshnock, the White male who had repeatedly and violently punched Jones, Hinkle, and another woman, was only charged with *misdemeanor* battery. A stark difference from Jones', an African American male, unfounded felony charge.

72.    While in handcuffs, JONES was then searched, surrounded, and stared down by approximately thirty (30) NPR police officers, some with their hands placed on their guns.

73.    JONES peacefully informed the officers that he was in pain and that he needed help; this peaceful request from JONES is evident from the body camera footage of the officers involved in the wrongful and illegal arrest.

74.    Despite his desperate pleas, the officers twisted his arms and wrists in unnatural positions, deliberately inflicting unnecessary pain on JONES.

75.    NPR, and specifically several of the officers involved, knew JONES from the community and knew that he had absolutely no history of violence, aggressive or illegal behavior, and that it was wholly unnecessary for approximately thirty (30) officers to surround JONES to make a physically aggressive arrest, especially since it had been over a week since the so called incident—the Protest *where JONES was the victim who was struck in the face by Oshnock.*

76.    Since the Protest, no action had been taken to arrest JONES prior to him coming into the police station to file the Missing Person Report that day.

77.    As is evident from body camera footage obtained from NPR, at no time during this wrongful arrest did JONES act violently or inappropriately; he respected the police officers and heeded their commands even though the arrest was unwarranted, unlawful, and unconstitutional.

78.    JONES neither threatened anyone verbally nor did he physically interfere in any way with the wrongful arrest and detention.

79.  Despite the intimidating and threatening circumstances, JONES calmly and respectfully inquired why he was being arrested as he did his best to cooperate with law enforcement officials.

80.  The NPR officers responded he was being arrested for battery on one of "their" law enforcement officers last week and that there was a video of him "pushing" a police officer.

81.  Confused, JONES asked what officer he allegedly committed battery on; however, the officers refused to answer the question and stated that everything would "come out" during discovery.

82.  All along, Detective Berge held JONES while Lieutenant Mellecker pushed down on JONES' handcuffed wrists, further inflicting physical pain on JONES.

83.  All the while, various NPR officers snickered and laughed as JONES, an African American male, was in clear physical and emotional distress as a result of being surrounded and arrested by an excessive number of White police officers, all of whom knew that JONES did not have a history of bad behavior and knew that there had been no assault and battery on police officer Nicholas Rickus. NPR knew that it was indeed JONES who was the victim of an assault by Oshnock, but took the opportunity to fabricate a story to charge JONES— an attempt to rid the City of a prominent civil rights activist and "teach him a lesson".

<u>The Criminal Trial where JONES was found Innocent by a Jury of his Peers</u>

84.  Due to NPR's wrongful actions and inactions, JONES was forced to defend himself at a two-day jury trial based on utterly unfounded and false charges brought against him by NPR. JONES won the trial and was found innocent of any wrongdoing because it was obvious the charges were falsified and unsupported by any type of evidence, which was clear through the testimony of the NPR officers placed on the stand during JONES' trial.

85.  The entire criminal case was based solely on the words of police officers Nicholas Rickus and Officer Brian Finch who had both responded to the call at the Protest.

86.  This two-day trial was two years in the making. However, it took less than two hours for a Pasco County jury to find JONES not guilty of battery on a law enforcement officer and not guilty of obstruction of justice. JONES' name was officially cleared; however the damage was still done as he was emotionally and physically scarred, and remains so to this day.

87.  During the trial, key evidence revealed that Officer Rickus could not point to where JONES had allegedly struck him after he responded to the call where a violent Oshnock was attacking the BLM protestors, including Hinkle and JONES. Interestingly, Officer Rickus could not even point out where JONES allegedly "tapped" his shoulder[8].

---

[8] Officer Rickus' testimony also contradicted his original report where he had stated he was the one that had initiated contact with JONES.

88.    According to trial testimony, Officer Rickus appeared at the scene and disarmed Hinkle, who was *legally* carrying a gun (like many of the supremacists that NPR tends to protect without question).

89.    Video taken by eyewitnesses and from one officer's body camera clearly showed JONES stepping in to help the women that had been attacked by Oshnock.

90.    The videos introduced at trial absolutely did not corroborate officer Rickus' claims that JONES had committed a battery against him.

91.    Moreover, Officer Finch testified that he was at the scene but did not see the battery (because there clearly was none) nor did he hear Officer Rickus say anything to JONES.

92.    JONES also testified at his trial and he told the Court, "I am a young African American man and I value my life, so I would never touch an officer with a loaded gun in his hand." As his innocent verdict would show, the truth prevailed and the jury found that JONES indeed did not commit any crimes against the NPR officers.

**Pasco BLM activist found not guilty after being wrongly accused of battery on a police officer**

The state only had one witness in its prosecution of Marlowe Jones—a cop who kept changing his story.

By Justin Garcia on Thu, May 5, 2022 at 5:06 pm

Marlowe Jones exits the Pasco County courthouse after a not guilty verdict.

93.   After his trial, it was discovered through public records, that City Manager Manns—who holds significant power under NPR's city charter—was in communication with other NPR officials and agents about JONES' trial.

94.   Not only do City Manager Manns' text messages reveal she was "not happy" that JONES was found innocent, but they reveal the incestuous and obsessive relationship that she, Chief Bogart, and other City officials and/or agents have with JONES and other community advocates.

95.   City Manager Manns appeared upset as she knew that NPR failed to achieve their perverse goal of incarcerating an innocent African American man who advocated for accountability of elected officials and voiced his opinions about important social issues the Council does not agree with.

96.   After his trial and innocent verdict, on or about September 6, 2020, JONES shared his concerns about BLM issues and his unlawful arrest with NPR's City

Council.  At the Council meeting, JONES asked why NPR had not investigated the actions and inactions of Police Chief Kim Bogart's department.

97.    In response, Mayor Marlowe attempted to paint JONES as a nefarious character who inserted himself between Hinkle and the NPR police officers.

98.    Conveniently, Mayor Marlowe omitted the fact that JONES was only at the scene because he was trying to protect Hinkle from Oshnock's violent and unprovoked attack.

99.    In typical and expected fashion, Mayor Marlowe kicked JONES out of the September 6 meeting, as he had absolutely no interest in hearing the concerns of a citizen who had been mistreated by the very people that took an oath to protect him and others.

**COUNT I: 42 U.S.C. § 1983 – VIOLATION OF CIVIL RIGHTS
(AGAINST NPR, ROBERT MARLOWE, KIM BOGART, DEBBIE MANNS,
NICHOLAS RICKUS, TIM BERGE, & CHRISTOPHER MELLECKER)**

100.    Plaintiff reasserts and realleges each and every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

101.    This cause of action is brought by JONES against all DEFENDANTS for the deprivation of his constitutional rights within the meaning of 42 U.S.C. § 1983.

102.    On July 31, 2020, DEFENDANTS, while acting under authority of the State of Florida and under color of law, deprived JONES of his rights and privileges secured to him by the Constitution of the United States, in violation of 42 U.S.C. § 1983.

103. This claim is authorized under the "Equal Protection Under the Law" Clause to the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, which prohibits government officials from denying any person within its jurisdiction equal protection under the law.

   a. On July 31, 2020, while acting under authority of the State of Florida and under the color of law, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, deprived JONES of his rights and privileges secured to him by the Fourteenth Amendment of the U.S. Constitution, including but not limited to, the right not to be deprived of liberty without due process of law, and the right to be free from false arrest.

   b. At the time of the wrongful arrest, JONES had not committed a crime and was not in the process of committing a crime; the DEFENDANTS knew that there was no evidence or probable cause that would remotely support their unfounded criminal charges.

   c. The primary and sole purpose of the illegal and wrongful detention and false arrest of JONES was to deprive and infringe upon JONES' Constitutional rights.

   d. As a result of the wrongful arrest, JONES was subjected to arbitrary government reprisal that is not equally applicable to all persons in the jurisdictions of the state of Florida, Pasco County, and/or NEW PORT RICHEY, in violation of the Fourteenth Amendment of the United

States Constitution. JONES was subjected to arbitrary rules by said NPR's agents and/or officials under the guise that JONES had committed a "battery" on one of their officers.

e. As a result of the wrongful arrest, JONES was deprived of his Constitutional right to not be deprived of liberty without due process of law, and the right to be free from false arrest.

104. This claim is further authorized under the First Amendment of the U.S. Constitution, which protects freedom of speech and assembly.

a. Acting in concert, DEFENDANTS jointly, while acting under authority of the State of Florida and under the color of law, further deprived JONES of exercising his First Amendment right of free speech and assembly.

b. DEFENDANTS' actions were motivated by JONES' racial identity and his outspoken concern for the lack of accountability in NPR and the unfair treatment of minorities by the same.

c. On multiple occasions, DEFENDANTS prevented JONES from speaking at City Council meetings and BLM protests. Other times, DEFENDANTS threatened JONES by stating that if JONES spoke out, he would be arrested or suffer other consequences. DEFENDANTS also harassed and intimidated JONES in an attempt to discourage him and prevent him from speaking out against injustice at the hands of the City.

d. Further, it is NPR's custom to systematically allow its employees and/or agents to punish citizens who exercise their rights to free speech when that speech is critical of the NPRPD. Such systematic custom has been widespread, pervasive, consistent, and ongoing.

e. As a result of the acts, customs, and practices of DEFENDANTS at Council Meetings and otherwise, JONES was deprived of his Constitutional right of free speech and assembly.

105.    At all times hereto, DEFENDANTS acted with the authority possessed by them by virtue of their employment with the State. At all times hereto, DEFENDANTS abused the position, power, and influence, given to them by the State.

106.    As a result of the acts, customs, and practices of DEFENDANTS, JONES' rights under the Fourteenth and First Amendments of the U.S. Constitution were infringed and subject to 42 U.S.C. § 1983. Such deprivations of rights by DEFENDANTS under the color of law constitute a violation of 42 U.S.C. § 1983.

107.    DEFENDANTS, acting in the course and scope of their duties as officers and/or city officials, took the actions complained of above with knowledge that the actions were in direct violation of the Constitution of the United States and the rights of JONES.

108.    At the time of the wrongful arrest, NPR had a custom, policy, practice and/or procedure in place that allowed its police officers and/or city officials to violate

the civil liberties of any person that peacefully and legally protested the racism and harassment occurring at the hands of DEFENDANTS.

109.   The actions and inactions of NPR's employees and agents violated the clearly established constitutional rights of JONES, rights of which every reasonable member of the public or governmental entity should have known.

**WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of actual damages, compensatory damages, consequential damages, and punitive damages against all DEFENDANTS, and award JONES his attorneys' fees and costs pursuant to 42 U.S.C. § 1983 and other applicable laws.

## COUNT II: FAILURE TO TRAIN
### (AGAINST NPR)

110.   Plaintiff reasserts and realleges each and every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

111.   This cause of action is brought by JONES against NPR for failure to train its officers and/or city officials on racial sensitivity and civil liberties of persons that exercise their rights of free speech and assembly.

112.   At the time of the wrongful arrest, NPR had a custom, policy, practice and/or procedure in place that allowed its police officers and/or city officials to violate the civil liberties of any person that peacefully and legally protested the wrongful racism, harassment, and violence of police officers and/or city officials against minorities in NPR.

113. NPR's failure to train its police department and/or city officials led to the wrongful arrest and continuous harassment and conspiracy against JONES. *See* ¶¶ 58-99.

114. Due to the plethora of complaints, reports, and misconduct surrounding NPR's police department and/or city officials, NPR knew of the need to train and/or supervise its police department and/or city official, especially regarding racially tense interactions, and made a deliberate choice to not do so.

115. NPR had notice and knowledge of the wrongful arrests occurring at the hands of its police officers like Officer Rickus or Officer Valente. Despite this knowledge, NPR failed to implement any policies or programs to train said officers and otherwise intentionally failed to protect the public and citizens of Florida from danger.

116. Instead, Chief Bogart and Mayor Marlowe jointly publicly deflected and defended NPR and its police officers, shifting blame and failing to take any accountability.

117. City Manager Mann willfully allowed her inappropriate romantic relationship with Chief Bogart to negatively affect her job, failing to supervise or request accountability from the City's various departments.

118. It is NPR's custom or policy to systematically allow NPRPD officers to punish citizens who exercise their rights to free speech when that speech is critical of the NPR.

119.    It is NPR's custom or policy to allow its police officers and/or city officials to scheme and conspire against social activists like JONES. Such systematic custom has been widespread, pervasive, consistent, and ongoing.

120.    NPR's actions and inactions in this case indicate a policy and custom of indifference to the rights of those they wrongfully arrest and a failure to properly train and/or supervise their officers in how to properly handle citizens that may protest the NPR and their tactics.

121.    NPR's actions and inactions in this case indicate a policy and custom of indifference towards the Constitutional rights of the minorities in NPR.

122.    NPR's failure to adequately train its personnel on how to properly identify real suspects, prior to conspiring and wrongfully arresting JONES, has resulted in the wrongful arrest and violation of his Constitutional rights.

123.    NPR's failure to adequately train its personnel on how to engage with minorities rather than harassing or intimidating them, has resulted in the wrongful, prejudice, and racist behavior towards JONES', in violation of his Constitutional rights.

    **WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of actual damages, compensatory damages, consequential damages, and punitive damages against NPR and award JONES his attorneys' fees and costs.

## COUNT III: FALSE ARREST
## (AGAINST NPR, KIM BOGART, NICHOLAS RICKUS, TIMOTHY BERGE, & CHRISTOPHER MELLECKER)

124. Plaintiff reasserts and realleges each in every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

125. This cause of action is brought by JONES against Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker for the false arrest that deprived JONES of his liberty on July 31, 2020.

126. Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker caused the unlawful detention and deprivation of JONES' liberty as it wrongfully allowed JONES to be arrested despite there being no probable cause or evidence to do the same. *See* ¶¶ 77-92.

127. Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker unlawfully detained and deprived JONES of his liberty on July 31, 2020 (a week after the alleged "battery" and "obstruction of justice") against JONES' will.

128. Defendants', NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker detention and arrest of JONES was unreasonable and not warranted by the circumstances, especially because JONES never touched any police officer at the Protest nor "obstructed" justice in any way. On the contrary, at the Protest, JONES was trying to diffuse a violent attack and stop the aggressor, Oshnock. *See* ¶¶ 61-66; 84-92.

129. Defendants', NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker detention and arrest of JONES was an intentional detention. As Chief Bogart admitted, NPR had waited approximately one week to decide whether they were going to arrest and charge JONES. Ultimately, they decided to falsely arrest and surround JONES at the NPR police department.

130. Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, willfully detained and contained JONES. JONES' detention was without his consent. The wrongful and false arrest was unlawful.

131. The false imprisonment of JONES was a due process violation under the Fourteenth Amendment of the Constitution of the United States.

132. As a direct and proximate result of this wrongful false arrest and false imprisonment of JONES, he has suffered grievously, has been brought into public scandal with great humiliation, mental suffering, and damaged reputation.

133. As a further direct and proximate result of the false arrest and false imprisonment, JONES has further suffered mental anguish, physical injury, humiliation, and loss of his freedom and Constitutional rights.

**WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of actual damages, compensatory damages, consequential damages, and punitive damages against NPR, KIM BOGART, NICHOLAS RICKUS, TIMOTHY

BERGE, and CHRISTOPHER MELLECKER and award JONES his attorneys' fees and costs.

## COUNT IV: MALICIOUS PROSECUTION
### (AGAINST NPR, KIM BOGART, NICHOLAS RICKUS, TIMOTHY BERGE, & CHRISTOPHER MELLECKER)

134.  Plaintiff reasserts and realleges each and every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

135.  This cause of action is brought by JONES against Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, for the prosecution and criminal judicial proceeding instituted against JONES.

136.  On July 31, 2020, (the "arrest"), NPR police officers, with malicious purpose, and acting jointly in concert with the other DEFENDANTS caused a prosecution and criminal judicial proceeding instituted against JONES. *See* ¶¶ 69-99.

137.  Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker were the joint legal cause of criminal proceeding against JONES. As explained above, the DEFENDANTS had a history of disdain towards JONES as they were critical of his social activism in NPR.

138.  There was a bona fide termination of the original proceeding in favor of JONES.

139.  Ultimately, after less than two (2) hours of deliberation, JONES was found innocent on both the battery and obstruction of justice charge. There was a clear absence of probable cause for prosecution of such proceedings. The only "evidence" of the purported battery and obstruction of justice was Officer

Rickus' testimony and that of his fellow coworkers.  Officer Rickus had failed to use his body camera (as policy required) and there was absolutely no video evidence that corroborated the false allegations made against JONES. *See* ¶¶ 69-92.

140.   Indeed, Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker acted with malice when they conspired and then wrongfully arrested and charged JONES on July 31, 2020. Upon information and belief, Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker with ill will, thought they would be able to falsely accuse and convict JONES. They did not anticipate that JONES would defend himself (and prevail) in front of a jury of his peers.

141.   As a direct result of Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker's actions and inactions, JONES has suffered damages, which include physical inconvenience, physical discomfort and pain, loss of time, loss of income, loss of his business, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, which are continuing to this day and are likely to continue in the future. JONES also suffered damages as the result of being forced to hire counsel and incur attorneys' fees and costs to defend the wrongful and malicious prosecution.

**WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of actual damages, compensatory damages, consequential damages, and punitive damages against NPR, KIM BOGART, NICHOLAS RICKUS, TIMOTHY

BERGE, and CHRISTOPHER MELLECKER and award JONES his attorneys' fees and costs.

## COUNT V: ABUSE OF PROCESS
**(AGAINST NPR, ROBERT MARLOWE, KIM BOGART, DEBBIE MANNS, NICHOLAS RICKUS, TIMOTHY BERGE, & CHRISTOPHER MELLECKER)**

142.    Plaintiff reasserts and realleges each and every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

143.    This cause of action is brought by JONES against all DEFENDANTS for their illegal, improper, and perverted use of process when they continuously violated JONES' rights and then falsely arrested him on July 31, 2020.

144.    Defendants, NPR, Mayor Marlowe, Chief Bogart, City Manager Manns, Officer Rickus, Detective Berge, and Lieutenant Mellecker, jointly made an illegal, improper, and perverted use of process when they wrongfully arrested JONES on July 31, 2020 (a week after the Protest where the purported battery occurred). *See* ¶¶ 18-99.

145.    Defendants, NPR, Mayor Marlowe, Chief Bogart, City Manager Manns, Officer Rickus, Detective Berge, and Lieutenant Mellecker had ulterior motives and/or purposes in exercising this illegal, improper, and perverted use of process. DEFENDANTS knew or should have known that there was no probable cause or reason to arrest JONES but chose to do it anyways (a week after the Protest) to intimidate, humiliate, and harm JONES. *See* ¶¶ 69-99.

146.    As a result of Defendants', NPR, Mayor Marlowe, Chief Bogart, City Manager Manns, Officer Rickus, Detective Berge, and Lieutenant Mellecker, false arrest

and unwarranted charges against JONES, JONES did indeed suffer damages. JONES was forced to defend himself in front of a jury and experienced severe emotional distress, physical injury, humiliation, and loss of his freedom and Constitutional rights.

**WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of actual damages, compensatory damages, consequential damages, and punitive damages against NPR, ROBERT MARLOWE, KIM BOGART, DEBBIE MANNS, NICHOLAS RICKUS, TIMOTHY BERGE, and CHRISTOPHER MELLECKER and award JONES his attorneys' fees and costs.

### COUNT VI: CIVIL CONSPIRACY
### (AGAINST NPR, ROBERT MARLOWE, KIM BOGART, DEBBIE MANNS, NICHOLAS RICKUS, TIMOTHY BERGE, & CHRISTOPHER MELLECKER)

147. Plaintiff reasserts and realleges each and every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

148. This cause of action is brought by JONES against all DEFENDANTS for their joint actions and civil conspiracy to falsely arrest JONES and violate his rights.

149. Defendants, NPR, Mayor Marlowe, Chief Bogart, City Manager Manns, Officer Rickus, Detective Berge, and Lieutenant Mellecker, jointly agreed and acted in concert to falsely arrest, harass, and humiliate JONES, in violation of JONES' Constitutional rights. *See* ¶¶ 29-99.

150. In pursuance of the conspiracy, upon information and belief, the DEFENDANTS followed JONES, prevented JONES from speaking at council meetings, and conspired to arrest him approximately one week after the Protest.

a.  NPR police department conspired to arrest (and did arrest) JONES a week after the Protest on July 31, 2020.

b.  Mayor Marlowe prevented JONES from speaking and raising his concerns at council meetings.

c.  Chief Bogart allowed and enabled JONES to be falsely arrested by his officers and even threatened JONES.

d.  City Manager Manns in concert with the DEFENDANTS, actively refused to request accountability from any of NPR's departments and allowed her romantic relationship with Chief Bogart negatively influence her job as City Manager. She also expressed dissatisfaction for JONES having been found innocent of their unwarranted criminal charges.

e.  Officer Rickus falsely accused JONES of battery even though JONES never touched him.

f.  Detective Berge and Lieutenant Mellecker both joined in and proceeded to wrongfully arrest JONES on July 31, 2020, inflicting physical and emotional pain.

151.  Upon information and belief, the DEFENDANTS jointly communicated with each other and aided the wrongful acts alleged herein.

152.  Upon information and belief, the DEFENDANTS jointly continue to harass and conspire against JONES. *See* ¶¶ 49-52; 69-99.

153.  JONES was harmed by DEFENDANTS and each of their joint actions and/or conspiracy to commit violations of federal civil rights.

154.    JONES was harmed by DEFENDANTS, and each of their joint actions and/or conspiracy to commit false imprisonment.

155.    As a direct result of the DEFENDANTS' joint actions and inactions, JONES has suffered damages, which include physical inconvenience, physical discomfort and pain, loss of time, loss of income, loss of his business, mental suffering, embarrassment, humiliation, disgrace and injury to his feelings and reputation, which are continuing to this day and are likely to continue in the future.

**WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of actual damages, compensatory damages, consequential damages, and punitive damages against NPR, ROBERT MARLOWE, KIM BOGART, DEBBIE MANNS, NICHOLAS RICKUS, TIMOTHY BERGE, and CHRISTOPHER MELLECKER and award JONES his attorneys' fees and costs.

### COUNT VII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (AGAINST NPR, KIM BOGART, NICHOLAS RICKUS, TIMOTHY BERGE, & CHRISTOPHER MELLECKER)

156.    Plaintiff reasserts and realleges each and every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

157.    This cause of action is brought by JONES against Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, for the intentional infliction of emotional distress caused to JONES as a result of their joint unlawful actions and/or inactions.

158.  Defendants', NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, joint actions of falsely arresting and prosecuting JONES, falsely accusing him of a crime and abusing the legal system to initiate malicious prosecution, and harassing and intimidating JONES, were intentional and/or reckless. Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker knew or should have known that JONES would suffer emotional distress as a result of their actions and/or inactions, especially in light of the heightened racial tensions surrounding the untimely murder of George Floyd at the hands of the police. *See* ¶¶ 49-52; 58-99.

159.  Defendants', NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, joint conduct was outrageous—beyond all bounds of decency, atrocious, and utterly intolerable in a civilized community. Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, harassed, intimidated, and cornered JONES, an African American male, until they managed to falsely arrest and wrongly charge him with a felony. Such behavior is reminiscent of the outrageous and despicable behavior that JONES' family lived through in NPR since 1924. *See* ¶¶ 52-53.

160.  Defendants', NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker, actions and/or inactions indeed caused JONES emotional distress and this emotional distress was and continues to be severe.

161.  The deliberate, intentional, and/or reckless actions or inactions of Defendants, NPR, Chief Bogart, Officer Rickus, Detective Berge, and Lieutenant Mellecker,

caused JONES to suffer severe emotional distress, anxiety, depression, nightmares, post-traumatic stress syndrome, among others, etc.

**WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of compensatory damages, actual damages, consequential damages, punitive damages against NPR, KIM BOGART, NICHOLAS RICKUS, TIMOTHY BERGE, and CHRISTOPHER MELLECKER and award JONES his attorneys' fees and costs.

## COUNT VIII: BATTERY
### (AGAINST TIMOTHY BERGE & CHRISTOPHER MELLECKER)

162. Plaintiff reasserts and realleges each and every allegation in Paragraphs 1 through 99 of this Complaint, as if fully set forth herein.

163. This cause of action is brought by JONES against Defendants, Detective Berge and Lieutenant Mellecker, for the battery on JONES when they jointly falsely arrested JONES on July 31, 2020.

164. Without justification and in violation of JONES' Constitutional rights, Detective Berge and Lieutenant Mellecker intentionally made physical contact with JONES in a manner that would inflict bodily harm and pain.

165. Despite JONES' pleas to not tug at his arms while in handcuffs due to the bodily harm it was causing, Lieutenant Mellecker intentionally continued to do so while Detective Berge held on to JONES. While Detective Berge held JONES, Lieutenant Mellecker pushed down on JONES' handcuffed wrists, causing excruciating pain to JONES.

166.   As a direct and proximate result of Detective Berge and Lieutenant Mellecker's actions, JONES has suffered damages, which include physical inconvenience, physical discomfort and pain, physical suffering, loss of time, mental suffering, embarrassment, humiliation, disgrace, and injury to his feelings and reputation, the physical and emotional aspects of which are continuing to this day and are likely to continue in the future.

**WHEREFORE**, JONES respectfully requests this Honorable Court enter an award of actual damages, compensatory damages, consequential damages, and punitive damages against TIMOTHY BERGE and CHRISTOPHER MELLECKER and award JONES his attorneys' fees and costs.

## DEMAND FOR JURY TRIAL

PLAINTIFF respectfully requests a jury trial on all issues above.

*[INTENTIONALLY LEFT BLANK]*

## RESERVATION OF RIGHT TO AMEND COMPLAINT

PLAINTIFF reserves the right to file amendments to this Complaint as may be appropriate.

Respectfully submitted this 31st day of March 2023:

**éclat Law, P.A.**

*/s/ Kevin K. Ross-Andino*
Kevin K. Ross-Andino, # 66214
kevin.ross@eclatlaw.com
Jolynn M. Falto, #1002743
jfalto@eclatlaw.com
Nikki Pappas Hudson, # 126355
nikki.pappas@eclatlaw.com
Crisol Lopez Palafox, # 1031282
crisol.lopezpalafox@eclatlaw.com

307 Cranes Roost Boulevard # 2010
Altamonte Springs, Florida 32701
Main Line: (407) 636-7004
*Attorneys for Plaintiff*